J-A07018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MAXINE LACROIX | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TRI-STATE PROPERTIES LLC, | : | No. 1265 MDA 2020 |
| WAFFLE HOUSE, AND EAST COAST | : | |
| WAFFLES INC. | : | |

Appeal from the Order Entered September 14, 2020
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2019-01980

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:              **FILED: MAY 11, 2021**

Appellant, Maxine LaCroix, appeals from the September 14, 2020 Order entering summary judgment in favor of East Coast Waffles, Inc. ("ECW"), and dismissing her Complaint with prejudice in this slip-and-fall negligence action. She challenges, *inter alia*, the trial court's application of the doctrine of hills and ridges. After careful review, we affirm.

The relevant facts and procedural history are as follows. On November 24, 2018, at 8:55 AM, Appellant and her friend Maynard Burt entered the Chambersburg Waffle House ("Waffle House") owned by ECW. Appellant and Mr. Burt left Waffle House approximately 25 minutes later, at 9:18 AM. After stepping off the sidewalk and into the parking lot, Appellant slipped and fell.

_____

[*] Former Justice specially assigned to the Superior Court.

As a result of her fall, Appellant sustained a left knee sprain and right rotator cuff tear.

On May 17, 2019, Appellant filed a Complaint against ECW[1] alleging negligence. Appellant asserted that, on the morning of her fall, the weather conditions were icy and the sidewalk by the entrance to Waffle House had not been properly treated. Appellant noted the absence of signage alerting patrons to possible slippery conditions. Appellant claimed that Waffle House had breached its duty to her to ensure that its property was safe and suitable for its intended purpose because it was foreseeable that icy weather conditions were occurring and because it was aware that the ice on the sidewalk was a hazard.

On June 18, 2019, ECW filed an Answer, and the matter proceeded through discovery. On August 21, 2019, Appellant served her first set of Interrogatories and Request for Production. On October 10, 2019, prior to serving a formal response to the discovery request, ECW provided to Appellant a surveillance video of Waffle House premises from the time of the fall. On October 31, 2019, ECW served its formal Answers to Appellant's discovery request. In its Answers, ECW identified five employees it believed were working at Waffle House at the time of the incident.

---

[1] Appellant originally named Tri State Properties, LLC, and Waffle House as defendants in the Complaint. By stipulation of the parties, on July 25, 2020, the trial court entered an Order permitting Appellant to amend the case caption to substitute East Coast Waffles as the defendant.

- 2 -

On November 4, 2019, Appellant filed a Motion to Compel complete discovery responses from ECW asserting that ECW's Answers to Interrogatories were insufficient. ECW filed a Response to the Motion to Compel, and a Supplemental Response to Appellant's First Set of Interrogatories and Request for Production of Documents. Relevantly, in the Supplemental Responses, ECW informed Appellant that, *inter alia*, it did not possess any witness, employee, agent, and/or party statements. ECW also provided additional information regarding Waffle House employees who were working at the time of Appellant's fall.

On January 24, 2020, Appellant deposed ECW employees Danielle Manning and Michael Reed. That same day, ECW deposed Appellant.

On February 3, 2020, Appellant filed a Motion for Sanctions asserting, relevant to the instant appeal, that, through the depositions, she discovered that the Waffle House employees present at the time of Appellant's fall each prepared a report of the incident. Appellant alleged that the employees presented the incident reports to ECW, that ECW retained the reports, and that ECW had failed to produce these reports to her in discovery. Appellant sought the immediate production of the reports, the payment of attorney's fees and punitive sanctions, and a jury instruction adverse to ECW.

On February 14, 2020, ECW filed a Response to Appellant's Motion for Sanctions. Although ECW conceded that Danielle Manning had testified that she remembered completing a document or incident report and remembered other employees also doing so and that Mike Reed had testified that

- 3 -

employees, including him, may have completed incident reports, which could have been sent on to Waffle House's division manager, Matthew Kretsch, ECW was unable to independently confirm the existence of any incident reports or employee statements prepared following Appellant's fall. In addition, ECW denied that it failed to preserve such incident reports or employee statements, if they had ever existed.[2]

ECW also included in its Response affidavits from: (1) Matthew Kretsch, a Waffle House division manager; (2) Craig Knight, a representative of Waffle House's general liability department; and (3) Teresa Jenkins, the general liability supervisor at Brentwood Services, the third-party administrator responsible for administering general liability claims filed against ECW, each of whom testified regarding the non-existence of employee reports or statements pertaining to Appellant's slip-and-fall incident.

Mr. Kretsch attested that he searched his records for the employee statements referred to by Mike Reed and found no evidence of any incident reports, statements, or any other documents related to Appellant's fall. He further attested that he did not destroy or dispose of any such statements, and that he could not produce any such statements.

---

[2] ECW also asserted that, even if the incident reports or statements had existed, Appellant was not prejudiced by ECW's failure to produce them because Appellant had the opportunity to speak with every person who had been present when Appellant fell and because it produced surveillance video of Appellant's fall.

In his affidavit, Mr. Knight described Waffle House's policy of gathering handwritten statements from employees working at the time of an alleged slip and fall. He affirmed that Waffle House's general liability department conducted an extensive search for incident reports from Appellant's fall but could not locate any.

Ms. Jenkins attested that, when Brentwood receives notice of a general liability claim against ECW, it prepares an electronic claim file into which it places documents related to the claim, including employee and witness statements. She further attested that, upon receiving a discovery request in this case for employee statements or incident reports, she conducted an extensive search of Brentwood's electronic claims files and could not locate any evidence of any incident reports, statements, or other investigative documents related to Appellant's fall that predated the service of Appellant's Complaint. Ms. Jenkins noted that if such documents had existed, they would have been saved to Brentwood's electronic claims investigation files and could not be destroyed, altered, or lost without a record, and no such record exists.

On March 30, 2020, the trial court entered two Orders. One Order denied Appellant's Motion for Sanctions and set May 1, 2020, as the deadline for the exchange of written discovery and exchange of photos, videos, audio recordings, documents, statements, interviews, or information in either party's possession. The court contemplated imposing sanctions if either party discovered any evidence after the May 1, 2020 discovery deadline. The second Order was hand-written on the preprinted proposed form of order

annexed to Appellant's Motion and stated: "Granted. The Defense must provide the statements in question to Plaintiff's counsel within 10 days." The court denied Appellant's request for monetary sanctions and an adverse jury instruction "at this time; [b]ut court may issue such relief prior to trial if necessary."

ECW did not provide any "statements in question" within 10 days of the Order, presumably owing to the non-existence of the statements. Appellant did not notify the court that ECW had not produced the statements. Further, Appellant did not thereafter file any additional motions to compel or for sanctions, did not take any additional depositions, and did not engage in any additional discovery.

After the close of discovery, on May 4, 2020, ECW filed a Motion for Summary Judgment. ECW asserted in the Motion that the "doctrine of hills and ridges" applied to Appellant's negligence claim, and that there was no genuine dispute of the material fact that no hills or ridges of ice or snow existed in the area where Appellant fell.

On May 26, 2020, Appellant filed an Answer to ECW's Motion for Summary Judgment. In lieu of a brief, Appellant attached portions of Appellant's deposition transcript. On June 8, 2020, Appellant submitted the June 3, 2020 affidavit of a former ECW employee, Dustin Gonzales, as another exhibit in lieu of a brief. Mr. Gonzales attested that, when he attended to Appellant immediately after her fall, the location where she fell was slick and

slippery and that Waffle House's manager had, earlier that day, placed ice salt on the walkway.

On June 22, 2020, Appellant filed a Brief in support of her Answer. Appellant argued that the court should deny ECW's Motion for Summary Judgment because ECW failed to meet its burden to demonstrate the non-existence of any genuine issues of material fact. Appellant asserted that ECW had still not produced, and, in fact had "spoiled," the employee statements she sought, which she intended to use as evidence to disprove ECW's defenses to Appellant's negligence claim. Brief in Opposition, 6/22/20, at 4. Appellant also argued that ECW was not entitled to entry of summary judgment because the doctrine of hills and ridges was inapplicable "due to the facts of the conditions on the premises" and, even if it were applicable, pursuant to Restatement (Second) of Torts § 323, it was "abrogated by the intervening acts of ECW," *i.e.*, Waffle House's manager placing salt in front of Waffle House on the morning of Appellant's fall. ***Id.*** at 4-5.

On September 14, 2020, the trial court entered an Order granting ECW's Motion for Summary Judgment. In its accompanying Opinion, the court explained that it found no genuine issue of material fact as to the applicability of the doctrine of hills and ridges because an ongoing weather event created generally slippery conditions in the community at the time of Appellant's fall. It further found that ECW did not breach its duty of care to Appellant because ECW did not allow any accumulations of snow or ice of such size and character

as to constitute a danger to Appellant, and that Restatement (Second) of Torts § 323 was inapplicable.  Opinion, 9/14/20, at 2, 11-13.

This timely appeal followed.  Appellant filed a court-ordered Pa.R.A.P. 1925 Statement asserting that: (1) the trial court failed to resolve all doubts as to the existence of a genuine issue of material fact in Appellant's favor; (2) the trial court failed to consider alleged spoliation of evidence by ECW as a material fact; and (3) the trial court misapplied the doctrine of hills and ridges due to ECW's intervening maintenance on the property.  The trial court filed a responsive Rule 1925(a) Opinion.

Appellant raises the following issues on appeal:

1. Did the lower [c]ourt err in failing to follow the precedent of ***Rodriguez v. Kra[vc]o Simon Co[.]***, 111 A.3d 1191 (Pa. Super. 2015)[,] and by granting [ECW's] Motion for Summary Judgment [w]here [ECW] spoiled [*sic*] evidence that may have been favorable to [Appellant], defied a [c]ourt [o]rder directing them to provide said evidence, and then relief on the lack of said evidence to meet their burden re: summary judgment, while also avoiding a possible unfavorable jury instruction on the issue of spoilage [*sic*]?

2. Did the lower [c]ourt err in its misapplication of the [d]octrine of [h]ills and [r]idges, [and,] thus[,] improvidently enter and Order for [s]ummary [j]udgment in favor of [ECW]?

Appellant's Brief at 4.

**Standard of Review**

Our Supreme Court has clarified our role in reviewing summary judgment dispositions as follows:

On appellate review[ ], an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion.  But the issue as to whether there are no genuine

- 8 -

issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (citations omitted). A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Id.*** (citation omitted); ***see also*** Pa.R.C.P. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." ***Summers***, ***supra*** at 1159 (citation omitted). "In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." ***Id.*** (citation and internal quotation marks omitted).

**<u>Issue 1 - Spoliation</u>**

In her first issue, Appellant claims that the trial court erred in not applying the holding in ***Rodriguez v. Kravco Simon Co.***, 111 A.3d 1191, 1196 (Pa. Super. 2015) (holding that an "open question about spoliation precludes the entry of summary judgment"). ***Id.*** at 10-16. Our review of the record, including Appellant's Response to ECW's Motion for Summary Judgment and Appellant's Rule 1925(b) Statement, indicates that Appellant has raised this specific argument for the first time in her appellate brief. Thus,

- 9 -

Appellant has not preserved this argument for appellate review. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the [lower] court are waived and cannot be raised for the first time on appeal."). ***See also Citizens Nat. Bank of Evans City v. Gold***, 653 A.2d 1245, 1248 (Pa. Super. 1995) ("It is well-settled that a new theory of relief cannot be advanced for the first time on appeal.").

Moreover, there is no open issue of spoliation. Appellant presumptively argues that ECW spoliated evidence and defied, without penalty, the trial court's Order to produce this evidence. She avers that these actions severely hampered her efforts to prove her case and, thus, the trial court should not have granted summary judgment. Appellant's Brief at 12-15. This claim, based on a mischaracterization of the court's conclusions, warrants no relief.

First, Appellant's argument presumes that ECW engaged in spoliation. However, Appellant ignores the fact that the trial court rejected Appellant's spoliation presumption when, on March 30, 2020, it "denied [Appellant's] motion for a spoliation inference." Trial Ct. Op., 11/18/20, at 2, 4. Appellant has not separately challenged the March 30, 2020 Order denying the spoliation inference by presenting it as a separate claim in her Rule 1925(b) Statement and her Brief.[3]

_____

[3] Appellant also failed to include in her Brief a statement of our scope and standard of review of orders pertaining to evidence spoliation. ***See*** Pa.R.A.P. 2111(a)(3) (requiring that an appellate brief include a statement of the scope of review and standard of review).

Additionally, to the extent that Appellant claims that the trial court should not have entered summary judgment in ECW's favor because ECW "defied" the trial court's discovery order, Appellant has waived this claim by abandoning her pursuit of the issue before the close of discovery on May 1, 2020. Although the court ordered ECW on March 30, 2020, to "provide the statements in question to [Appellant's] counsel within 10 days," when ECW failed to produce any additional discovery, Appellant did not file any additional motions to compel or a motion for sanctions to alert the court to ECW's inaction. In fact, Appellant took no further action to obtain any statements or enforce the court's March 30, 2020 directive before ECW filed its Motion for Summary Judgment on May 4, 2020. Accordingly, any challenge to the grant of summary judgment based on ECW's failure to produce discovery in response to the March 30, 2020 Order is waived.

**Issue 2 – Hills and Ridges**

In her second issue, Appellant claims that the trial court should not have applied the doctrine of hills and ridges to the instant facts. Appellant's Brief at 17-19. She avers, in the alternative, that, even if the doctrine was applicable, it is "moot" because of ECW's intervening act of laying salt on the premises. *Id.* at 19-22.

Preliminarily, we note that, to prove a negligence claim, a plaintiff must demonstrate that "the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff

suffered an actual loss or damages." ***Merlini v. Gallitzin Water Auth.***, 980 A.2d 502, 506 (Pa. 2009).

Here, the parties agree that Appellant was a business invitee of Waffle House. A possessor of land is subject to liability for his invitee's injuries if the possessor: (1) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee; (2) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (3) fails to exercise reasonable care to protect the invitee against the danger. ***Wentz v. Pennswood Apartments***, 518 A.2d 314, 315 (Pa. Super. 1986).

Here, the trial court found that the "hills and ridges" doctrine supported the grant of summary judgment to ECW. The "hills and ridges" doctrine protects an owner or occupier from liability for slippery conditions resulting from ice and snow where generally slippery conditions prevail in the community, unless the owner has permitted the ice and snow to accumulate unreasonably into ridges or elevations. ***See generally Harmotta v. Bender***, 601 A.2d 837, 841-42 (Pa. Super. 1992) (reviewing the "hills and ridges" doctrine). To overcome the application of the "hills and ridges" doctrine in this context, a plaintiff is required to prove: "(1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was the dangerous

accumulation of snow and ice which caused the plaintiff to fall." *Id.* at 841 (quoting *Gilligan v. Villanova University*, 584 A.2d 1005, 1007 (Pa. Super. 1991). Where "a specific localized patch of ice exists . . . the existence of 'hills and ridges' need not be established." *Harmotta*, 601 A.2d at 842 (citation omitted). To the contrary, the hills and ridges doctrine will apply where there are general slippery conditions in the community. *Collins v. Phila. Suburban Dev. Corp.*, 179 A.3d 69, 74 (Pa. Super. 2018); *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1088 (Pa. Super. 1997).

"[T]he entire 'gist' of the hills and ridges doctrine is that a landowner has no duty to correct or take reasonable measures with regard to storm-created snowy or icy conditions until a reasonable time after the storm has ceased." *Collins*, 179 A.3d at 76.

Appellant first argues that the trial court erred in applying the doctrine of hills and ridges to granting summary judgment in ECW's favor because the trial court indicated in its Opinion that there was a "genuine dispute over whether there was ice on the premises where [Appellant] fell." Appellant's Brief at 18. She posits that the trial court's finding that "[t]he slippery conditions [on the premises] were due to 'sleet, freezing rains and normal rain[,]" indicates that Appellant must "clearly" have fallen on a "specific localized patch of ice [] on a sidewalk otherwise free of ice and snow." *Id.* at

19. This "finding," she concludes, renders the doctrine of hills and ridges inapplicable.[4]

The trial court set forth the evidence upon which it relied in determining that ECW was entitled to summary judgment as follows:

> [O]n November 24, 2018, at about 9:18 [AM], at the Chambersburg Waffle House, there was no accumulation of ice and snow on the premises. However, all parties agree that it was precipitating, and that the sidewalk and parking lot on which [Appellant] fell were slippery. Danielle Manning and Michael Reed both testified that it was raining outside when they arrived at work, but that the weather report for the day called for freezing rain. [Appellant] admitted that it was sleeting outside when Waffle House personnel came out immediately after her fall to tend to her. Finally, the NOAA report for Shippensburg, PA shows a high of 33 degrees Fahrenheit and a low of 21 degrees Fahrenheit with 1.05 inches of precipitation.

Trial Ct. Op., 9/14/20, at 8.

In addition, Appellant testified that, after she fell, Mr. Burt exited Waffle house and slipped on the sidewalk. Deposition, 1/24/20, at 64-65. She further testified that, after an ambulance had been called, she was informed that "the ambulance said it was so slippery that . . . it was going to take time to get there," and that "it took quite a few people to put me up on the gurney because it was so slippery." *Id.* at 50, 66. Furthermore, Waffle House video surveillance showed that precipitation was ongoing and that after Appellant fell, an ECW employee came around the side of the building and slipped and fell on the sidewalk in front of the entrance to the restaurant. The video did

---

[4] Appellant never claimed that she had fallen on a localized patch of ice, and contrary to Appellant's assertion, the trial court did not find that Appellant had fallen on a localized patch of ice.

not show the existence of hills and ridges of snow or ice. In sum, all the evidence, including the testimony, surveillance video, ambulance report and weather data, established that generally slippery conditions existed during an ongoing weather event at the time of Appellant's fall.

From this evidence, the court concluded that there was no genuine issue of material fact that the sidewalk and parking lot at Waffle House were generally slippery as a result of ongoing precipitation at the time of Appellant's fall. In addition, the court concluded that the evidence indicated that these conditions were prevalent in the community at the time of the fall, and observed that Appellant had not alleged the existence of hills and ridges of snow and ice. Accordingly, the court concluded that there was no genuine issue of material fact in dispute. The record supports this conclusion.

In the alternative, Appellant argues that, even if the doctrine of hills and ridges does apply, ECW violated its duty of care when it negligently undertook to render services to her. She claims that when Mr. Reed salted the premises at the beginning of his shift at 6:30 AM, the hills and ridges doctrine "was abrogated [] by the intervening acts of ECW as set forth in Section 323 of the

Restatement (Second) of Torts."[5, 6]  Appellant's Brief at 19.  She asserts that Mr. Reed's failure to continue to salt the premises before Appellant fell at 9:18 AM constituted a negligent performance of a duty he undertook.

The trial court rejected Appellant's argument, relying on **Morin**, 704 A.2d 1085.  In **Morin**, the plaintiff fell in a parking lot "covered with a thin glaze of ice."  **Id.** at 1088.  About one hour before the plaintiff's fall, the defendant motel's manager, upon arriving at 6:30 AM, "spread salt and sand around part, but not all of the motel parking lot."  **Id.** at 1087.  Morin argued, like Appellant, that the defendant had "created a duty to exercise reasonable

---

[5] Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

[6] To the extent that Appellant also asserts that Restatement (Second) of Torts § 324A "is applicable to this case[,]" Appellant's Brief at 21, we find this claim waived as Appellant has not explained how or why it is applicable given the facts of this case or otherwise developed an argument in support of its applicability.  **See** Pa.R.A.P. 2119(a) (the argument section of an appellate brief must include "discussion and citation of authorities as are deemed pertinent.");  **Sephakis v. Pa. State Police Bureau of Records and Id.**, 214 A.3d 680, 686-87 (Pa. Super. 2019) (an appellant waives any issue she fails to develop sufficiently).

care in salting and sanding its parking facility based upon the motel manager's voluntary undertaking to salt and sand parts of the motel parking lot." ***Id.*** at 1088.

In affirming summary judgment in favor of the defendant, this Court interpreted Section 323 and, because no Pennsylvania authority on this issue existed, adopted the reasoning of two New York cases, which held that "one who voluntarily undertakes to salt and sand an icy area where no duty exists, does not create a duty merely by salting and sanding some of the area." ***Id.*** We further held that "there is no evidence that [the manager's] activities actually increased the natural hazards of the ice nor is there any evidence tending to demonstrate that [the plaintiff] relied upon [the manager's] salting and sanding. Indeed, [the plaintiff] did not know that portions of the parking lot had been treated until after she fell." ***Id.***

> Instantly, the trial court here opined as follows:
>
> Exactly like in ***Morin***, the manager of Waffle House arrived at work at 6:30 AM and salted and sanded the premises. Just like ***Morin***, even if ECW's salting and sanding did create a voluntary undertaking, [Appellant] presents no evidence that [she] relied upon, or even knew, that ECW had salted and sanded the premises. Neither did [Appellant] present any evidence that ECW's salting and sanding increased [her] risk of falling.

Trial Ct. Op., 9/14/20, at 13.

Accordingly, the trial court concluded that summary judgment in favor of ECW was appropriate because Appellant had not set forth sufficient "evidence or facts to make out a *prima facie* cause of action or defense." ***Id.***

- 17 -

We agree with the trial court that **Morin** controls.[7] Accordingly, Appellant's argument, based on Restatement Section 323, fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>05/11/2021</u>

---

[7] Appellant argues that the holding in **Morin** is inapplicable to this case because Appellant fell on the sidewalk and not in the parking lot. Appellant's Brief at 22. The record, including the testimony of Appellant and other witnesses and the surveillance video, belies this claim. Appellant testified that she fell in the Waffle House parking lot. **See** Deposition, 1/24/20, at 55. ("No, I didn't slip on the sidewalk.").